UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| STEPHEN L. KNOX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:23-cv-01323-JEH |
| | ) |
| | ) |
| KYLE MILLER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

### ORDER

This cause is before the Court following its attempts to recruit counsel to represent Plaintiff.

On April 4, 2025, Plaintiff filed a motion asking the Court to find counsel to represent him. Based upon Plaintiff's representations in his motion (specifically his mental illness and his lack of access to a law library), the Court granted Plaintiff's motion and attempted to recruit counsel to represent him.

Unfortunately, the Court has been unsuccessful in its attempts to recruit counsel to represent Plaintiff in this case. The presence of counsel for Plaintiff would have greatly assisted the Court, and the Court wished that an attorney would have agreed to represent Plaintiff voluntarily.

The law is clear that this Court does not possess the authority to require an attorney to accept *pro bono* appointments on civil cases such as this. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007). The most that the Court may do is to ask for volunteer counsel. *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992)

(holding that it is a "fundamental premise that indigent civil litigants have no constitutional or statutory right to be represented by counsel in federal court.").

In *Pruitt*, the Seventh Circuit explained that, in deciding whether to recruit counsel for a plaintiff, a district court is to determine: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself? *Pruitt*, 503 F.3d at 654–55 (citing *Farmer v. Haas*, 990 F.2d 319, 321–22 (7th Cir. 1993)).

The Seventh Circuit has clarified that a district court may also consider the merits of the plaintiff's claim in determining whether to recruit counsel. *Watts v. Kidman*, 42 F.4th 755, 764 (7th Cir. 2022). However, a district court must keep in mind that a *pro se* plaintiff is, generally, unschooled in the law and, therefore, might have difficulty articulating the circumstances that will indicate the merit that might be developed by competent counsel. *Id*.

The first inquiry under *Pruitt* is mandatory and requires the plaintiff to make a reasonable attempt to obtain a lawyer on his own. *Thomas v. Wardell*, 951 F.3d 854, 859 (7th Cir. 2020); *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021). "The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims himself." *Id*. These two considerations "are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." *Pruitt*, 503 F.3d at 655.

Specifically, courts should consider "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Id*. This assessment of the plaintiff's apparent competence extends beyond the trial stage of proceedings; it

2

must include "the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Id.*

"Although there are no fixed criteria for determining whether a plaintiff is competent to litigate his own case, a district court certainly should consider the plaintiff's literacy, communication skills, educational level, litigation experience, intellectual capacity, and psychological history." *Eagan*, 987 F.3d at 682. "The court must examine specifically the plaintiff's ability to litigate the case, as opposed to the ability of any 'jailhouse lawyer' assisting the plaintiff." *Id.*

"Similarly, there are no fixed criteria for evaluating the factual and legal difficulty of the plaintiff's claims." *Id.* Instead, "[t]he inquiry into plaintiff['s] competence and case difficulty is particularized to the person and case before the court." *Pruitt*, 503 F.3d at 656. Thus, "as the case moves beyond the pleading stage, into discovery, and closer to trial, the plaintiff will face an increasingly complex set of demands." *Id.* at 663 (Rovner, J., concurring); *Eagan*, 987 F.3d at 682-83.

The Court's Pro Bono Coordinator posted the need for counsel in this case on the Court's website as well as the Seventh Circuit's website. The Pro Bono Coordinator also directly contacted nearly a dozen attorneys/law firms who are on the Court's *pro bono* attorney list in this area, and no one agreed or volunteered to represent Plaintiff. This is common, even though the Pro Bono Coordinator tries to space out the requests.

The Pro Bono Coordinator also sent a request to the 1,500 plus attorneys who are members of the Seventh Circuit Bar Association asking for a volunteer to represent Plaintiff. Not a single attorney agreed to represent Plaintiff or even expressed a general interest about the case. The Court notes the number of counsel

3

that it contacted—not to disparage the attorneys who could not represent Plaintiff—but to show its attempts to recruit counsel.[1]

Recruiting *pro bono* counsel in this District is difficult. The need for *pro bono* attorneys far exceeds the supply. *McCaa v. Hamilton*, 959 F.3d 842, 845 (7th Cir. 2020) ("District courts are thus inevitably in the business of rationing a limited supply of free lawyer time."). Although "[a]lmost everyone would benefit from having a lawyer, [] there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases. *DeWitt v. Corizon, Inc.*, 760 F.3d 654, 657 (7th Cir. 2014) (internal quotation omitted); *Mejia v. Pfister*, 2021 WL 647085, * 4 (7th Cir. Feb. 19, 2021) ("And, for its part, the district court found itself having to make a choice about how best to allocate scarce resources, for it remains the sad reality that there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.")(internal quotation omitted).

There are nearly 700 *pro se* prisoner cases pending in the Central District of Illinois at this time, with approximately five hundred new *pro se* prisoner cases filed each year. Nearly all *pro se* prisoners request the appointment of *pro bono* counsel several times throughout their cases. Even if only ten percent (10%) of *pro se* prisoners need counsel under *Pruitt*, the District would need roughly fifty (50) new attorney volunteers every year to avoid pro bono appointments to multiple cases. The Court's understanding is that about seventy-five percent (75%) of the attorneys on the District's volunteer list have already taken at least one case in the past eight years.

Additionally, the supply of volunteer attorneys appears to be shrinking, despite recruitment efforts. In the Court's experience, even the attorneys who have

---

[1] The Court thanks its volunteer counsel, whom the Court contacts frequently and who volunteer when their practice allows them to be available.

agreed to accept *pro bono* appointments in the past are more hesitant, or simply decline, to accept future appointments. *Eagan*, 987 F.3d at 699-700 (Easterbrook, J., dissenting) (noting the limited and shrinking attorney pool in the Central District of Illinois and stating that "[w]hen we compel a judge to divert the resources of the bar to weak claims such as Eagan's, we reduce the likelihood that other persons will receive adequate legal assistance."). In essence, the situation seems to be getting worse, not better.

An attorney's reluctance to volunteer is understandable. These cases can be a professional and a financial burden upon the attorneys who regularly practice in this Court. Most firms located within the Central District of Illinois are small firms. As such, losing an attorney for several weeks for trial preparation and trial is a burden not only financially but also on the whole firm's ability to represent its paying clients. Further, no statutory basis exists for compensating *pro bono* counsel for fees or expenses unless *pro bono* counsel wins the case, which is extremely rare. The Central District of Illinois provides reimbursement for up to $1,000 in expenses, but that is typically a drop in the bucket.

Additionally and too often, recruited counsel is rewarded for their efforts with a legal malpractice suit, a complaint letter being sent to the ARDC, or both. *McCaa*, 959 F.3d at 845 (agreeing with the district court that the decision to try to recruit counsel can and should be informed by the realities of recruiting counsel in the district); *Eagan*, 987 F.3d at 699-700 (Easterbrook, J. dissenting) (noting that legal assistance is not available in unlimited sources, especially in the Central District of Illinois where the legal practices are small and where firms lack the resources generally required to accept these types of cases). The Court is not saying that Plaintiff would take such actions against a *pro bono* attorney if Plaintiff did not prevail, but the Court understands counsel's hesitancy to take on these cases. Regardless of the reason, the Court found no takers for this case.

The Court has reached its limit as to what it can do at this point to try to find counsel to represent Plaintiff. As the Seventh Circuit has opined:

> As we have emphasized before, § 1915(e)(1) does not create a right to counsel in civil cases. *Dupree v. Hardy*, 859 F.3d 458, 462 (7th Cir. 2017); *Pruitt*, 503 F.3d at 657–58. That a court decides to recruit a volunteer does not create a right either. Nor does it mean that the court has an indefinite commitment to search until a volunteer is found. The help of recruited lawyers is a valuable resource but a limited one. Demand often exceeds supply, especially when marginal costs are zero or minimal. (Wilborn has pursued four separate suits against more than sixteen defendants related to this incident.) Given this dynamic, identifying a volunteer is not always possible, especially for cases outside of major metropolitan areas. There are limits to what a court must do after deciding to recruit counsel.

*Wilborn v. Ealey*, 881 F.3d 998, 1008 (7th Cir. 2018). Therefore, although the Court tried to find volunteer counsel for Plaintiff, the Court informs him that he will need to represent himself going forward in this case.

For whatever assistance that it may provide to him, the Court notes that the most pressing issue that Plaintiff faces is his need to respond to Defendants' motion for summary judgment (D/E 26). Specifically, Plaintiff will need to offer evidence that demonstrates the existence of a genuine dispute of fact on one or more of the essential elements of his excessive force claim in violation of his Eighth Amendment rights, which are that Defendants "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (internal citation omitted).

**IT IS, THEREFORE, ORDERED:**

**1.    The Court's previous Order conditionally granting Plaintiff's motion for counsel is VACATED.**

2.  Plaintiff will need to represent himself moving forward in this case, including filing a response(s) to the pending motion for summary judgment.

3.  Plaintiff must file his response(s) to Defendants' motion for summary judgment on or before July 31, 2025.

4.  If Plaintiff fails to timely respond to Defendants' motion, the Court will rule on Defendants' motion without awaiting for a response from Plaintiff, may grant the motion for summary judgment, and may dismiss this case.

*It is so ordered.*

Entered: Click or tap to enter a date.

<u>s/Jonathan E. Hawley</u>
U.S. District Judge